IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Pamela Branch,               )        C. A. No. 2:04-23020-TLW-RSC
                             )
            Plaintiff,        )
                             )
        -versus-             )        **REPORT AND RECOMMENDATION**
                             )
Jo Anne Barnhart, Commissioner)
of Social Security,          )
                             )
            Defendant.        )

This case is before the court pursuant to Local Rule
83.VII.02, D.S.C., concerning the disposition of Social Security
cases in this District.

The plaintiff, Pamela Branch, brought this action pursuant
to Section 205(g) of the Social Security Act, as amended (42
U.S.C. § 405(g)), to obtain judicial review of a final decision
of the Commissioner of Social Security denying the plaintiff's
claims for disability insurance benefits under Title II of the
Social Security Act.

### ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance
benefits on March 8, 2002, alleging that she became unable to
work on June 1, 1997, due to fibromyalgia, chronic pain in her
back, chest and right leg, fatigue and depression.  The
application was denied initially and on reconsideration by the
Social Security Administration.  On November 19, 2002, the
plaintiff requested a hearing.  The administrative law judge
before whom the plaintiff appeared with counsel and her husband,
Randy Branch, considered the case de novo, and on July 26, 2004,

found that the plaintiff was not under a disability as defined in
the Social Security Act, as amended.  The administrative law
judge's finding became the final decision of the Commissioner of
Social Security when it was approved by the Appeals Council on
September 21, 2004.

In making the determination that the plaintiff is not
entitled to benefits, the Commissioner adopted the following
findings of the administrative law judge:

> 1.  The claimant met the nondisability
> requirements for a period of disability insurance
> benefits set forth in Section 216(i) of the Social
> Security Act and was insured benefits through
> September 30, 1998.
>
> 2.  The claimant has not engaged in substantial
> gainful activity since the alleged onset
> disability.
>
> 3.  The claimant has the following medically
> determinable impairments: fibromyalgia, mild
> degenerative disc disease, and pelvic adhesions.
>
> 4.  The claimant does not have any impairment or
> combination of impairments that significantly
> limit her ability to perform basic work-related
> activities; therefore, the claimant does not have
> a "severe" impairment (20 CFR § 404.1520).
>
> 5.  The claimant was not under a "disability" as
> defined in the Social Security Act, at any time
> through the date of this decision (20 CFR §
> 404.1520(c)).

Tr. 16.

## APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits
shall be available to those persons insured for benefits, who are
not of retirement age, who properly apply, and who are "under a

disability."  42 U.S.C. § 423(a).  Disability is defined in 42
U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful
> activity by reason of any medically determinable
> physical or mental impairment which can expected
> to result in death or which has lasted or can be
> expected to last for at least 12 continuous
> months.

To facilitate a uniform and efficient processing of
disability claims, the Social Security Act has by regulation
reduced the statutory definition of "disability" to a series of
five sequential questions.  An examiner must determine whether
the claimant (1) is engaged in substantial gainful activity, (2)
has a severe impairment, (3) has an impairment which equals an
impairment contained in the Social Security Act listings of
impairments, (4) has an impairment which prevents past relevant
work, and (5) has an impairment which prevents him from doing any
other work.  20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in
disability cases is narrowly tailored to determine whether the
findings of the Commissioner are supported by substantial
evidence and whether the correct law was applied.  Richardson v.
Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453,
1456 (4th Cir. 1990).  Consequently, the Act precludes a de novo
review of the evidence and requires the court to uphold the
Secretary's decision as long as it is supported by substantial
evidence.  See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988)
(citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)).

3

The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## DISCUSSION

At oral argument before the undersigned on July 13, 2005, the plaintiff through counsel urged that the instant case be remanded to the Commissioner to apply proper legal standards in his determination whether the plaintiff's impairments are non-severe.  A review of the record and relevant case law reveals that the plaintiff is correct.

## SEVERE IMPAIRMENTS

Social Security Ruling 85-28 explains the determination of whether a plaintiff has severe impairments:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal

4

education, and a limited work experience, an
impairment found to be not severe would not
prevent him or her from engaging in SGA.

The severity requirement cannot be satisfied when
medical evidence shows that the person has the
ability to perform basic work activities, as
required in most jobs. Examples of these are
walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying or handling; seeing,
hearing, and speaking; understanding, carrying
out, and remembering simple instructions; use of
judgment, responding appropriately to supervision,
coworkers, and usual work situations; and dealing
with changes in a routine work setting. Thus,
these basic work factors are inherent in making a
determination that an individual does not have a
severe medical impairment.

Although an impairment is not severe if it has no
more than a minimal effect on an individual's
physical or mental ability(ies) to do basic work
activities, the possibility of several such
impairments combining to produce a severe
impairment must be considered. Under 20 CFR,
sections 404.1523 and 416.923, when assessing the
severity of whatever impairments an individual may
have, the adjudicator must assess the impact of
the combination of those impairments on the
person's ability to function, rather than assess
separately the contribution of each impairment
existed alone. A claim may be denied at step two
only if the evidence shows that the individual's
impairments, when considered in combination, are
not medically severe, i.e., do not have more than
a minimal effect on the person's physical or
mental ability(ies) to perform basic work
activities. If such a finding is not clearly
established by medical evidence, however,
adjudication must continue through the sequential
evaluation process.

Inherent in a finding of a medically not severe
impairment or combination of impairments is the
conclusion that the individual's ability to engage
in SGA is not serious affected. Before this
conclusion can be reached, however, an evaluation
of the effects of the impairment(s) on the
person's ability to do basic work activities must
be made. A determination that an impairment(s) is

5

> not severe requires a careful evaluation of the
> medical findings which describe the impairment(s)
> and an informed judgment about its (their)
> limiting effects on the individual's physical and
> mental ability(ies) to perform basic work
> activities; thus, an assessment of function is
> inherent in the medial evaluation process itself.
> At the second step of sequential evaluation, then,
> medical evidence alone is evaluated in order to
> assess the effects of the impairment(s) on ability
> to do basic work activities. If this assessment
> shows the individual to have the physical and
> mental ability(ies) necessary to perform such
> activities, no evaluation of past work (or of age,
> education, work experience) is needed. Rather, it
> is reasonable to conclude, based on the minimal
> impact of the impairment(s), that the individual
> is capable of engaging in SGA.

SSR 85-28.

Here, the administrative law judge found that the plaintiff
had the following impairments:  fibromylagia, mild degenerative
disc disease, and pelvic adhesions.  (Tr. 16).  The
administrative law judge next concluded that the plaintiff, "does
not have any impairments or combination of impairments that
significantly limit her ability to perform basic work-related
activities; therefore, the claimant does not have a severe
impairment."  (Tr. 16).

In making this determination, the administrative law judge
quoted SSR 85-28 properly: "the severity requirement cannot be
satisfied when medical evidence shows that the individual has the
ability to perform basic work related activities."  However, the
administrative law judge failed to follow the Ruling when he
reasoned, "There is no documented medical evidence in the records
that the claimant has any limitations in her ability to [perform
basic work related activities].  (Tr. 15).  The administrative
law judge did not rely on medical evidence which showed that the

6

plaintiff has the ability to perform basic work related
activities because there are no such records.  No physician
opined or otherwise noted that the plaintiff could perform basic
work functions.

Plaintiff's treating physician, Dr. Donald Wu, treated the
plaintiff for a sleep disorder, chronic fatigue, back and
abdominal pain, and "tender points on her body" (Tr. 166) and
diagnosed her with fibromyalgia.  (Tr. 171).  He also opined that
the plaintiff was disabled  "because of Pam's severe case of
fibromyalgia, chronic fatigue, and pelvic pain... ."  (Tr. 164).
Dr. Wu referred the plaintiff to a physician who specializes in
rheumatology, Dr. Robert E. Turner, who examined her on October
7, 1997.  Dr. Turner wrote that his musculoskeletal examination
revealed "she had fairly classic trigger points in the occipital
and paracervical areas of the neck and in the mid superior
trapezius areas.  She also has some tenderness over the right
greater trichanteriic bursa and left sacroiliac joint."  (Tr.
168, 169).  Additionally, the plaintiff's other treating
physician, Dr. Paul Freel, wrote that, in 1997 the plaintiff was
diagnosed with fibromyalgia which "has been very debilitating"
and that the plaintiff is "significantly disabled." (Tr. 165).

The administrative law judge simply misstated the medical
evidence and, in effect, placed the burden on the plaintiff to
produce medical evidence which affirmatively showed she could not
perform work functions.

Further, the administrative law judge did not perform an
evaluation of the effects of the plaintiff's impairment(s) on the

7

plaintiff's ability to do basic work activities, as required by
SSR 85-28.  "A determination that an impairment(s) is not severe
requires a careful evaluation of the medical findings which
describe the impairment(s) and an informed judgment about its
(their) limiting effects on the individual's physical and mental
ability(ies) to perform basic work activities; thus, an
assessment of function is inherent in the medical evaluation
process itself."  Id.  The case should be reversed and remanded
to the Commissioner for a proper evaluation of whether the
plaintiff's impairments, singly and in combination, are severe
within the meaning of the Act and a determination of the
plaintiff's residual functional capacity and to explicitly
indicate the weight given to relevant evidence.  Murphy v. Bowen,
810 F.2d 433, 437 (4th Cir. 1987); Gordon v. Schweiker, 725 F.2d
231, 235-36 (4th Cir. 1984).  If on remand, it is determined that
the plaintiff does have severe impairments, the administrative
law judge is to continue the sequential evaluation process.

## CONCLUSION

     Pursuant to the power of this court to enter a judgment
affirming, modifying, or reversing the Commissioner's decision
with remand in Social Security actions under sentence four of
§§205(g) and 1631(c)(3) of the Social Security Act, it is
recommended that the Commissioner's decision be reversed under
sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a
remand of the cause to the Commissioner for further proceedings
consistent with this opinion.  See, Melkonyan v. Sullivan, 111

8

S.Ct. 2157 (1991).  The Clerk of Court should enter a separate

judgment to Rule 58 of the Federal Ruled of Civil Procedure.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,

September 1, 2005